IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DONNELL FLOURNOY, | ) | |
| #126385, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 1:11-cv-00522-WKW |
| | ) | [WO] |
| WARDEN MCSWAIN-HOLLAND, | ) | |
| *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This cause is before the court on a 28 U.S.C. § 2254 petition for habeas corpus filed by Petitioner Donnell Flournoy on June 28, 2011.[1]  Petitioner was an inmate of the Alabama Department of Corrections, but it appears he has been released from custody, and his current address is a street address in Dothan, Alabama.  *Doc. No. 32.*  Petitioner challenges his January 12, 2010, probation revocation in the Circuit Court for Houston County, Alabama.

The parties submitted briefs on the question whether Petitioner's claims are procedurally defaulted or fail to state a federal claim.  The court then sua sponte ordered Petitioner to show cause why this case should be not dismissed as barred by *Flournoy v.*

_____

[1]Although the present petition was stamped "filed" in this court on June 30, 2011, Petitioner signed it on June 28, 2011.  Pursuant to the prison "mailbox rule," the court considers June 28, 2011, as the date of filing.  *See Doc. No.* 13 at 1 & n.1; *see also Houston v. Lack*, 487 U.S. 266, 271-72 (1988); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam) ("Absent evidence to the contrary in the form of prison logs or other records, [this court] will assume that [the prisoner's petition] was delivered to prison authorities the day he signed it . . . .").

*Duffie*, 2012 WL 4378099, at *3 (M.D. Ala. Sept. 7, 2012), *report and recommendation adopted*, 2012 WL 4711545 (M.D. Ala. Oct. 3, 2012), *aff'd sub nom. Flournoy v. Culver*, 534 F. App'x 848 (11th Cir. 2013) (per curiam) ("*Flournoy* I").[2]  *Doc. No. 29.*  Petitioner responded.  *Doc. No. 32.*  Taking judicial notice of the prior proceedings, and upon careful consideration of the filings in the present case and the relevant law, the undersigned Magistrate Judge concludes the petition is due to be dismissed as moot, barred by res judicata based on the judgment against Petitioner in *Flournoy* I, or without merit under 28 U.S.C. § 2254(d).

## I.  MOOTNESS

Article III of the United States Constitution confers jurisdiction on the district courts to hear and determine "cases" or "controversies." They do not sit to render advisory opinions. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).  They do not rule upon questions which are hypothetical in nature or which do not affect the rights of the parties in the case before the court. *Lewis v. Cont'l Bank Corp.*, 494 US. 472, 477 (1990).  Furthermore, "[t]his case-or-controversy requirement subsists through all stages of federal judicial proceedings,

---

[2]"Although Federal Rule of Civil Procedure 8(c) classifies claim preclusion as an affirmative defense, [d]ismissal by the court sua sponte on res judicata grounds . . . is permissible in the interest of judicial economy where both actions were brought before the same court." *Shurick v. Boeing Co.*, 623 F.3d 1114, 1116 n.2 (11th Cir. 2010) (per curiam) (citation and internal quotation marks omitted); *see also Blevins v. City of Tuskegee, Ala.*, 2011 WL 855334, at *1 (Mar. 11, 2011) (Watkins, C.J.) (quoting *Shurick*, 623 F.3d at 1116 n.2 ).  The judgment in *Flournoy* I was entered in this Federal District Court for the Middle District of Alabama, and the undersigned is familiar with the case, having issued the Recommendation to dismiss the various defendants and claims. *Flournoy* I, 2012 WL 4378099.

trial and appellate . . . [I]t is not enough that a dispute was very much alive when the suit was filed." *Id.* An actual controversy must exist at all times when the case is pending. *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974). Where the only relief requested is injunctive in nature, it is possible for events subsequent to the filing of the complaint/petition to make the matter moot. *Nat'l Black Police Assoc. v. District of Columbia*, 108 F.3d 346, 350 (D.C. Cir. 1997) (change in statute); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner); *Tawwab v. Metz*, 554 F.2d 22, 24 (2d Cir. 1977) (change in policy).

A claim becomes moot when the controversy between the parties is no longer alive because one party has no further concern in the outcome. *Weinstein v. Bradford*, 423 U.S. 147, 148 (1975); *Saladin v. Milledgeville*, 812 F.2d 687, 693 (11th Cir. 1987). Release from custody often moots a habeas petition, depriving the court of a case or controversy to resolve. *See Lane v. Williams*, 455 U.S. 624, 632 (1982). A petitioner who faces future collateral consequences as a result of the challenged conviction does not have a moot petition. *Id.*; *Carafas v. Lavalle*, 391 U.S. 234, 237 (1968) (where a petitioner seeks to challenge the validity of his underlying conviction, he can often satisfy the case-or-controversy requirement of Article III of the Constitution by showing that the conviction affects his ability to vote, engage in certain businesses, serve as juror, or hold public office). The court does not presume such consequences, however, where only the sentence and not the conviction is being attacked, such as in Petitioner's case where he is challenging his probation revocation. *E.g.*, *Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998) (release from prison mooted habeas action

challenging probation revocation where petitioner failed to show collateral consequences connected to revocation); *see also Lane*, 455 U.S. at 624 (where prisoner only challenges his sentence, and not his conviction, *Carafas* does not apply); *United States ex rel. Graham v. United States Parole Comm'n*, 732 F.2d 849, 850 (11th Cir. 1984) (challenge to parole regulation mooted by release on parole as a favorable decision would not entitle petitioner to any additional relief). "Thus, *Spencer* counsels a more cautious approach to the presumption of collateral consequences," requiring a petitioner to affirmatively allege and demonstrate such consequences. *See Beachem v. Schriro*, 141 F.3d 1292, 1294 (8th Cir. 1998) (citing *Spencer*, 523 U.S. at 12-14).

Petitioner's aim in filing this action was to remedy the injury attending his probation revocation on January 12, 2010.  Based on his most recent address in Dothan, Alabama, it appears he has accomplished that.  *Doc. No. 32.*  Although Petitioner states in his response that he is being held by Warden Giles at Ventress Prison in Clayton, Alabama, the current warden there is actually Christopher Gordy, and Petitioner is not listed as a current inmate anywhere within the Alabama Department of Corrections.  *Doc. No. 32,* at 10; http://www.doc.alabama.gov (last accessed July 14, 2014).  Petitioner suggests no current collateral consequences from the subject sentences or that he will suffer any collateral consequences in the future.  Even if he did so allege, the mere possibility of future consequences is too speculative to give rise to a case or controversy. *See Spencer*, 523 U.S. at 7-8; *see also United States ex rel. Graham*, 732 F.2d at 850.  After considering the

4

foregoing, the court finds that dismissal of the instant petition as moot is appropriate, as reaching the merits of the arguments presented in this action would serve no purpose in light of Petitioner's release from custody on the challenged sentences.  The court recognizes that respondents do not argue the petition is moot, and Petitioner has not had an opportunity to address whether he faces collateral consequences that would satisfy the case-or-controversy requirement.  *See Spencer*, 523 U.S. at 7-8; *Carafas*, 392 U.S. at 237; *United States ex rel. Graham*, 732 F.2d at 850.  Nevertheless, even if the petition were not moot, the decision in *Flournoy* I is res judicata and precludes this lawsuit.

## II.  PRECLUSION

Petitioner already has pursued federal relief for the alleged errors in his state probation revocation.  Although the prior state court judgment is not the sources of the preclusive judgment for the present action,[3] it is helpful to put the prior federal proceedings in the context of the state court proceedings that are at the core of his habeas challenge.

### A.  State Court Proceedings

In November 2009, Petitioner pleaded guilty to possession of a controlled substance in violation of Alabama law.  *Doc. No. 11-19*, at 2-3 (Court of Criminal Appeals June 17,

---

[3]Normally a habeas case brought to review a state court judgment on the ground that it is in violation of federal law is not subject to traditional principles of res judicata. *Cf. Lehman v. Lycoming Cnty. Children's Servs. Agency*, 458 U.S. 502, 512 (1982) ("writ of habeas corpus is a major exception to the doctrine of res judicata"); *McCleskey v. Zant*, 499 U.S. 467, 478-79 (1991) (discussing history of the writ).  Petitioner, however, has sought and received federal review of the facts and law that constitute the due process issue in his section 2254 case.  Thus, the court is not bound by the prior state proceeding, but rather it is bound by the prior federal judgment on the merits of Petitioner's due process claim.

2011, decision).  He was sentenced to fifteen years in prison, but the sentence was split between one year in the Houston County Community Corrections Work Release Program ("Work Release Program"), followed by three years of supervised probation.  *Id.* at 3. Petitioner did not appeal.

Respondent Veronica Alvarado, the Work Release Program Employment Officer, worked with Petitioner to find him a suitable job, but on December 29, 2009, she informed Respondent Skip Duffie, the Probation Officer, that Petitioner "has disabilities that make it difficult for him to seek full-time employment," and Petitioner had told her "it is difficult for him to work."  *Doc. No. 11-20*, at 11.  On December 30, 2009,  Duffie filed a report to Respondent Alabama Circuit Court Judge Lori Ingram that Petitioner failed to comply with the Work Release Program rules because "due to his medical conditions [] it is difficult for him to work." *Doc. No. 11-20*, at 12.  Duffie recommended that Petitioner be returned to jail awaiting his revocation hearing set for January 12, 2010.  Petitioner received notice of the report on December 30, 2009.  *Id.*

On January 12, 2010, the state court held a hearing on a request to revoke Petitioner's probation.  *Doc. No. 11-8*, at 3 (Court of Criminal Appeals Apr. 15, 2011, decision describing the proceedings).  Petitioner was present but not represented by counsel.  The evidence included Petitioner's written acknowledgment and testimony from Duffie that Petitioner understood he was required to have a job and work as one of the conditions of staying in the Work Release Program.  *Id.*  Petitioner admitted he had a spinal disease, was

6

disabled, and could not work.  He did not provide documentation of his disability.  *Id.*  He admitted that participation in the Work Release Program was not an option for him, given his inability to work.  *Id.*  The court revoked Petitioner's probation and ordered him to serve the remainder of his sentence with the Department of Corrections.  *Id.*

Petitioner appealed the revocation and raised only one issue, that is, "whether the circuit court failed to advise him of his right to request legal counsel."  *Id.*  In Alabama, the right to counsel in revocation proceedings is not absolute. Instead, a probationer is entitled to counsel at the probation revocation hearing, and an indigent probationer will be appointed counsel upon request "[i]f the probationer makes a colorable claim that the probationer has not committed the alleged violation . . . or [e]ven when the violation is a matter of public record or is uncontested, if there are substantial reasons that justify or mitigate the violation and that may make revocation inappropriate, and the reasons are complex or otherwise difficult to develop or present."  Ala. R. Cr. P. 27.6(b).  The Alabama Court of Criminal Appeals remanded, holding that the record did not indicate whether the circuit court advised Petitioner of his right to request counsel under Rule 27.6(b) at the revocation hearing.  *Doc. Nos. 11-8,* at 3; *11-19,* at 3.  It directed the circuit court to determine whether Petitioner should have had counsel.  *Doc. No. 11-8,* at 3.  On remand, the circuit court conducted a hearing and determined that Petitioner was not entitled to appointment of counsel under Rule 27.6(b) because "there was 'no compelling reason to find that there was any [colorable] claim in as much as [Flournoy] admitted that he could not work'" at the January 12, 2010,

revocation hearing. *Id.* at 3-4 (alterations in original). The case returned to the Court of Criminal Appeals, which held that, based on the supplemented record, the circuit court complied with Rule 27.6(b). It dismissed the appeal as moot because Petitioner received the relief he requested in his appeal. *Id.* at 4. Petitioner's further attempt to obtain review on direct appeal was unsuccessful. *Doc. No. 11-10*, at 1-3, 7, 11; *Doc. No. 11-12*. Petitioner's post-conviction action was also unsuccessful, and he did not seek further postconviction review before the Alabama Supreme Court. *Doc. Nos. 11-19, 11-20, 11-21, 11-22.*

## B. Prior Federal Suit

While Petitioner pursued state remedies regarding the probation revocation, he also filed a federal action brought under 42 U.S.C. § 1983 regarding the revocation hearing. *Flournoy* I, 1:10-cv-104-MHT-WC, *Doc. No. 1.* Petitioner named as defendants Commissioner Mark Culver, Lieutenant Jones and Lieutenant Napa of D.S.I. Security, Work Release Program Director Gary Knight, Probation Officer Duffie, and Employment Officer Alvarado. *Id.* at 3. Petitioner claimed his due process, equal protection, and "Disability Acts, Social Security Act and Handicapped Acts" rights were violated when his probation was revoked and he was removed from the Work Release Program. *Id.* Petitioner's requested relief was "for investigation by the U.S. Attorney Office Dept. of Justice Civil Rights Division, Office of Civil Rights to Order the Defendants to Replace my money they took, my jewelry they took and to sue each Defendant for the sum of $10,000 each punitive damages. $10,000 monetary damages." *Id.* at 4. The court dismissed defendants Culver, Jones, and

Napa preservice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (iii). *Flournoy* I, 1:10-cv-104-MHT-WC, *Doc. No. 12.* The court entered summary judgment in favor of defendants Knight, Duffie, and Alvarado because Petitioner suffered no violation of his due process or equal protection rights, and it ruled his request for injunctive relief was mooted by his release. *Flournoy* I, 2012 WL 4711545 (adopting report and recommendation). In issuing the recommendation with regard to the due process claim, the undersigned Magistrate Judge enumerated the procedural protections afforded to parolees during parole revocation and determined that Petitioner received all the process due:

> The loss of liberty occasioned by parole revocation requires that parolees be accorded due process. *Morrissey v. Brewer*, 408 U.S. 471 (1972). The same due process requirements apply in probation revocation hearings. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). However, "the full panoply of rights due a defendant in [a criminal prosecution] does not apply to parole [or probation] revocations." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). In order to revoke parole or probation, there must be "(1) a formal finding that a probationer or parolee has committed a violation and (2) a determination that the violation was serious enough to warrant reimposing the probationer's or parolee's original sentence." *United States v. Ramirez*, 347 F.3d 792, 800 (9th Cir. 2003) (citations omitted). Due process requires that "the final revocation of probation must be preceded by a hearing, although the factfinding body need not be composed of judges or lawyers." *Black v. Romano*, 471 U.S. 606, 611-12 (1985) (citations omitted). As part of this hearing, the probationer is "entitled to written notice of the claimed violations of his probation; disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; a neutral hearing body; [ ] a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation . . . ; [and an opportunity] to cross-examine adverse witnesses, unless the hearing body specifically finds good cause for not allowing confrontation." *Id.* at 612.
>
> Here, Plaintiff has not shown that these due process requirements were not satisfied. The procedural obligations required by federal law were fulfilled. Plaintiff received written notice regarding the specific nature of his violations

and the supporting evidence, and he had a hearing that comported with the constitutional requirements of due process. Accordingly, Defendants are due to be granted summary judgment on Plaintiff's due process claim.

  To the extent Plaintiff's complaint may be understood to allege a claim that his transfer to a more secure correctional facility amounted to a due process violation, he is likewise entitled to no relief as such action, while more burdensome on an inmate, is "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983) (a prisoner has no constitutional right to be confined in a particular institution); *Sandin v. Conner*, 515 U.S. 472, 478 (1995). In general, "as long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed on him . . . the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460-61 (1989) (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)).

*Flournoy* I, 2013 WL 4738099, at *4 (alterations in original). The court also considered and rejected Petitioner's claim that he was treated differently because he had a disability. *Id.* at *5. On review of the recommendation, the District Court agreed with the recommendation and further held that Petitioner's claim of race discrimination was meritless and untimely, and it ruled that Petitioner "abandoned any allegations he attempted to present in his complaint based on violations of the ADA [Americans with Disabilities], the "Handicapped Act," or the "Social Security Act as his opposition made clear he was litigating his claims regarding a denial of due process and violations of the equal protection clause due to his disabilities as it concerned the revocation of his probation with the county work release program." *Flournoy* I, 2012 WL 4711545, at *1 (alteration added).

Petitioner appealed. On August 13, 2013, the Court of Appeals for the Eleventh Circuit held Petitioner failed to present evidence he was a qualified individual with a

disability, thus he failed to satisfy the first prong of a prima facie case under Title II of the ADA. *Flournoy* I, 534 F. App'x at 852. Regarding the due process claim, the Court of Appeals affirmed, holding:

> A defendant in probation revocation proceedings, although not entitled to all the procedural protections afforded a defendant in criminal proceedings, is entitled to certain protections, including written notice of the alleged probation violations, disclosure of the evidence against him and an opportunity to be heard in person and present evidence and witnesses and to cross-examine witnesses, a neutral hearing body and a written statement by the factfinder of the reasons for the revocation and the evidence relied upon. *Black v. Romano*, 471 U.S. 606, 611-12 (1985); *Morrissey v. Brewer*, 408 U.S. 471 (1972).[]
>
> Here, the record reflects that these due process requirements were satisfied at Flournoy's revocation hearing. Specifically, in accordance with Alabama law, the state court held a hearing before removing Flournoy from work release, revoking his probation and committing him to ADOC's custody. *See* Ala. Code § 15-18-175(d)(3) (providing for probation revocation hearing); Act No. 93-693, 1993 Ala. Laws 1324, 1328, § 10 (providing for work release revocation hearing). At the hearing, Flournoy acknowledged receiving notice of the alleged violation and indicated that he wanted to proceed with the hearing. Flournoy was given the opportunity to present evidence and testify (both of which he did) and to cross-examine the state's witness, Defendant Duffie (which he declined to do). The state court asked the parties whether there were any alternatives to revocation, and the prosecutor indicated that there were none. The state court explained in open court and in a subsequent written order the basis for the revocation—Flournoy's admitted inability to obtain or maintain employment. In short, Flournoy received all the process that was due.
>
> Flournoy misses the point by arguing that his "transfer" from the work release program to ADOC custody violated his due process rights because it subjected him to conditions and a degree of confinement not authorized by his conviction. *See Meachum v. Fano*, 427 U.S. 215, 223-25 (1976) (concluding that due process did not require prisoner to receive a hearing before being transferred between prisons because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"). Flournoy received notice and a hearing. So, to the extent he has a liberty interest sufficient to invoke due process protections (whether state-created or constitutional), Flournoy received

those due process protections.

*Id.* at 853-54 (footnote omitted).   The Court of Appeals further noted that Petitioner abandoned his claim related to equal protection and his claim for injunctive relief.  *Id.* at 851 n.2.

### C.  Present Suit

Petitioner filed the instant section 2254 petition on June 28, 2011, before his state proceedings were complete, and after he filed his section 1983 suit.[4]   *Doc. Nos. 1, 2.* Petitioner named as Respondents Warden Kieff Lambert,[5] Skip Duffie, Lori Ingram, Doug Valeska, the State of Alabama, Veronica Alvarado, and Luther Strange.  Petitioner raises the following claims for habeas relief:[6]

1.   The trial court violated the United States and Alabama Constitutions by not advising Petitioner under Rule 27.6 that he had a right to counsel at the revocation hearing, *Doc. No. 1*, at 4;

2.   The trial court violated the United States and Alabama Constitutions by not advising Petitioner under Rule 27.6 that his statements would be used against him, *Doc. No. 1*, at 4;

3.   The trial court violated the United States and Alabama Constitutions by not advising Petitioner under Rule 27.6 that he could be released on bond, and by not releasing Petitioner on bond, *Doc. No. 1*, at 5;

---

[4]The court dismissed as premature Petitioner's previous habeas petition challenging the revocation proceeding in *Flournoy v. State of Alabama Dep't of Corr.*, 1:10-cv-00144-TMH, Order of June 10, 2010, *Doc. No. 13* (adopting Report and Recommendation, *Doc. No. 12).*

[5]The court substituted Petitioner's then-current warden, Sharon McSwain-Holland, for Lambert.  *Doc. No. 10.*

[6]The first four claims are taken from the Petition.  *Doc. No. 1.*  The remainder of the claims are gleaned from Petitioner's brief accompanying the Petition.  *Doc. No. 2.*  Petitioner identifies other claims in his response to the order to show cause, but he did not seek permission to amend the petition, and the court does not consider the claims.  *Doc. No. 32.*

4.      The trial court violated the United States and Alabama Constitutions by failing to comply with Rule 27.6 and not providing Petitioner any documents or other witnesses except those showing his disability and inability to work, *Doc. No. 1*, at 5;

5.      The trial court failed to appoint him counsel at the revocation hearing, *Doc. No. 1*, at 4; *Doc. No. 2*, at 4;

6.      The trial court failed to schedule a separate revocation hearing and instead converted the initial appearance into the final hearing, in violation of the two-step process in Rule 27.6, *Doc. No. 2*, at 3, 5; and

7.      The trial court failed to consider his justification or mitigating reasons for violating probation, and the trial court failed to consider other options besides revocation, *Doc. No. 2*, at 3, 6.

*Doc. Nos. 1, 2.*

### D.  Res Judicata

"The general principle of res judicata prevents the relitigation of issues and claims already decided by a competent court." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011).  There are two forms of res judicata:  Issue preclusion (also called collateral estoppel) and claim preclusion (also called res judicata).  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  Because the court is considering the preclusive effect of a prior federal decision, the court applies federal principles of claim preclusion and issue preclusion.  *Compare CSX Trasnp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1316 (11th Cir. 2003) ("[F]ederal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction.") *with Cmty. State Bank*, 651 F.3d at 1263 (the rendering state's principles of claim preclusion or issue preclusion apply when considering the preclusive effect of a judgment in that state).  A prior federal action will bar a subsequent federal action under issue preclusion, or collateral estoppel, when the following four

13

elements are present: "'(1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.'" *CSX Transp., Inc.*, 327 F.3d at 1317 (quoting *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986)).  Claim preclusion will bar a subsequent federal action if the following four elements are present: "'(1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved both cases.'"  *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990) (quoting *I.A. Durbin*, 793 F.2d at 1549) (footnote omitted).  When it applies, claim preclusion is expansive, barring not only claims that were raised in the prior action, but also claims that could have been but were not raised.  *Citibank*, 904 F.2d at 1501 (citations omitted). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979) (footnote omitted). The court concludes that both claim and issue preclusion bar Petitioner's suit. The court first addresses claim preclusion.

### 1.  Final Judgment on the Merits by a Court of Competent Jurisdiction

The first two elements of claim preclusion are met because it is undisputed that this court acted as a court of competent jurisdiction in *Flournoy* I, and the court issued a final judgment on the merits of the issues and claims in that case.  *Citibank*, 904 F.2d at 1501.

### 2.  Identical Parties

The third element of claim preclusion is met for Petitioner Flournoy because he is identical to Plaintiff Flournoy in *Flournoy* I.  Before considering whether the remaining parties are identical, the court must clarify the proper respondent in the instant petition. Petitioner has been released from custody, and assuming the case is not moot and he "may be subject to future custody," respondent Strange, the Alabama Attorney General, is the only proper current respondent.  *See* 28 U.S.C. § 2242 (habeas petition shall allege "the name of the person who has custody over him and by virtue of what claim or authority, if known"); Rule 2(b), *Rules Governing Section 2254 Cases in the United States District Courts* (if petitioner "may be subject to future custody . . . name as respondents both the officer who has current custody and the attorney general of the state where the judgment was entered"). Consequently, respondents Duffie, Alvarado, Ingram, Valeska, State of Alabama, and McSwain-Holland, are due to be dismissed as improper respondents.  *See also Doc. No. 10* (substituting Petitioner's then-current warden, McSwain-Holland, for Petitioner's former warden, Lambert).  The court now turns to the question whether Strange may be bound by the judgment in *Flournoy* I.

Strange was not a party in *Flournoy* I.  The Supreme Court recognizes six categories of relationships which are excluded from the general rule that a nonparty cannot be bound by a prior judgment.  *Taylor*, 553 U.S. at 893-95.  These six categories include agreement, substantive legal relationships, adequate representation, assumed control over the litigation, suit filed as a designated representative, and a statutory scheme. *Id.; see also Griswold v. Cnty. of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010) (discussing *Taylor* and recognizing abrogation of previously used "virtual representation" analysis in Eleventh Circuit).  The Supreme Court did not provide an exhaustive list of "substantive legal relationships," but it explained they include such things as "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." *Taylor*, 553 U.S. at 894 (citing 2 Restatement (Second) of Judgments §§ 43-44, 52, 55 (1980)).  As the official responsible for Petitioner's custody, Strange is the successor in interest to Duffie and Knight, Petitioner's probation officer and the director of the Work Release Program, respectively, who were parties in *Flournoy* I and the officials responsible for Petitioner's custody when his probation was revoked.[7]  *See Rule 2 Advisory Committee Notes 1976 Adoption, Rules Governing Section 2254 Cases in the United States District Courts* (if applicant is on probation or

---

[7]Petitioner did not specify in *Flournoy* I whether the suit was against Duffie and Knight in their individual or official capacities, but "[t]he course of the proceedings" indicates that Petitioner meant to sue defendants in both individual and official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. The course of proceedings in such cases typically will indicate the nature of the liability sought to be imposed." (internal citations omitted)); *see also Davis v. Davis*, 551 F. App'x 991, 995-96 (11th Cir. 2014) (discussing application of res judicata in suits against persons in their official and individual capacities).

parole, "[t]he named respondents shall be the particular probation or parole officer responsible for supervising the applicant, and the official in charge of the parole or probation agency, or the state correctional agency, as appropriate."). The obligation to maintain custody of Petitioner passed from Duffie and Knight to Strange, and as such, Strange is in privity with Duffie and Knight. Consequently the court determines that Strange has a substantive legal relationship with a party to the judgment in *Flournoy* I, and Strange may be bound by that judgment.

### 3. Same Causes of Action

Under claim preclusion principles, two causes of action are the same if the second "arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1239 (11th Cir. 1999) (quotation marks and citation omitted). The court "must compare the substance of the actions, not their form." *Id.* (internal quotation marks and citation omitted). Here, Petitioner's habeas claims all arise out his probation revocation that was the subject of his litigation in *Flournoy* I. Thus, the two causes of action are the same. All four elements of claim preclusion are met, therefore Petitioner is barred from pursuing the present suit regarding his probation revocation, and this lawsuit is due to be dismissed.

### 4. Issue Preclusion

In addition, all four elements of issue preclusion are met regarding Petitioner's federal due process claim. Petitioner asserts in this habeas action that his probation revocation

17

hearing failed to comply with federal[8] due process requirements.  *Flournoy* I already put in judicial repose this exact issue and the issue whether Petitioner's rights under the ADA were violated.  It determined that Petitioner received all the process he was due at his probation revocation hearing and he suffered no ADA violation.  Petitioner had a full and fair opportunity to litigate and resolve the issues in *Flournoy* I, thus he is collaterally estopped from relitigating them here.  *See CSX Transp., Inc.*, 327 F.3d at 1317.

## III.  SECTION 2254(d) REVIEW

To the extent the court cannot declare the petition moot or barred by the prior case, the petition is still due to be dismissed.  Setting aside the procedural hurdles Petitioner faces,[9] under the deferential standard of review in section 2254(d), the decision of the Alabama state courts was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S.

---

[8]To the extent Petitioner claims he is entitled to habeas relief for violations of state law, his claims are without merit.  This federal court may consider a petition "for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  This court has authority to grant habeas relief for errors of federal law only, not Alabama state law.  *Id.; see also Ferguson v. Sec'y, Dep't Corr.*, 580 F.3d 1183, 1211-12 (11th Cir. 2009) (claim involving solely state law issues could not serve as the basis for a federal habeas claim).

[9]"When relief is due to be denied even if claims are not procedurally barred, we can skip over the procedural bar issues, and we have done so in the past."  *Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011) (citations omitted); *see also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

362, 404-06 (2000) (discussing standard of review); *Downs v. Sec'y, Fla. Dep't of Corr.*, 738 F.3d 240, 256-57 (11th Cir. 2013) (discussing highly deferential standard of review under § 2254(d)).   Alabama does not unconditionally provide for counsel at probation revocation hearings, and the decision not to provide counsel to Petitioner under the circumstances presented did not offend principles of "fundamental fairness," as determined by the United States Supreme Court.   *See Gagnon*, 411 U.S. at 790 ("the need for counsel must be made on a case-by-case basis") ; *cf. United States v. Webb*, 565 F.3d 789, 794-95 (11th Cir. 2009) (no Fifth Amendment due process right to counsel for motion under 18 U.S.C. § 3582(c)) (citing *Gagnon*, 411 U.S. at 790).   Likewise, Petitioner is not entitled to habeas relief based on his argument for two separate hearings.   *Morrissey* does not require the two-hearing system that Petitioner describes.   *See Benion v. Nielsen*, 2:10-cv-785-MHT-CSC, 2013 WL 1613241, at *9-10, 13 (M.D. Ala. Mar. 15, 2013) (approving Alabama's unified preliminary/full revocation hearing where petitioner had advance written notice of the alleged violation and evidence supporting the charges, and hearing satisfied *Morrissey* and its progeny), *report and recommendation adopted*, 2:10-cv-785-MHT, 2013 WL 1609638 (M.D. Ala. Apr. 15, 2013).   Petitioner received written notice of his parole violation on December 30, 2009, as well as the supporting documents used as evidence against him, and at his January 12, 2010, hearing he received all the procedural obligations required under *Morrissey* and *Gagnon*.   *See Flournoy* I, 534 F. App'x at 853-54; *see also Benion*, 2013 WL 1613241, at *12; 28 U.S.C. § 2254(d)(1) & (2).   Thus, in the alternative, this court finds that

19

after reviewing the § 2254 petition, respondents' answers, petitioner's response, the state court record and applicable federal law, no evidentiary hearing is required, and that the petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

### IV.  CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that Respondents Duffie, Ingram, Valeska, State of Alabama, Alvarado, and McSwain-Holland be DISMISSED, and that the petition for habeas corpus relief filed by Donnell Flournoy against Respondent Strange be DISMISSED as moot, or in the alternative as barred by res judicata, or in the alternative as without merit.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **July 29, 2014**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual

findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

 Done this 15th day of July, 2014.

      /s/ Wallace Capel, Jr.
      WALLACE CAPEL, JR.
      UNITED STATES MAGISTRATE JUDGE